## J. P. AND D. W. BOYD *v.* THE STATE.

1. INFORMATIONS — AFFIDAVIT.— A *nolle prosequi* of a former information does not preclude the use of the affidavit therefor as the basis of a new information. *Goode* v. *State*, 2 Texas Ct. App. 520, cited on this subject with approval.
2. FALSE IMPRISONMENT.— See evidence *held* insufficient to sustain a conviction for false imprisonment though but a nominal penalty had been imposed.

APPEAL from the County Court of Delta. Tried below before the Hon. C. S. NIDEVER, County Judge.

A fine of one cent was the penalty assessed against each of the appellants upon their conviction on an information which charged them with the false imprisonment of one William Portwood, a boy who was the nephew of J. P. Boyd. The appellants were father and son, and all the witnesses were relatives of each other, and of the appellants.

Mrs. Pickens, the first witness for the State, was the sister of J. P. Boyd, and the aunt of D. W. Boyd and William Portwood. She testified that about March 27, 1880, William Portwood came to her house from J. P. Boyd's, where he had been staying for a month or so. He had been sick with the measles, and informed witness that he left the Boyds because they did not treat him well. That same evening, Mary Taylor came and told

William Portwood that his uncle, J. P. Boyd, said for him to come home; but William did not go. The next morning, D. W. Boyd and his brother Johnnie came and told Portwood that their father, J. P. Boyd, said for him to come home. Portwood refused to go with them, and D. W. Boyd went back home and, together with his father and mother, came back to witness's. J. P. Boyd and his wife came in a buggy, and got out and entered the house. J. P. Boyd took hold of William Portwood's arm or hand, and told him that he, Boyd, wanted him to go home. William got up and he and J. P. Boyd started out, when Jugurtha Portwood (sister of William) interfered and took hold of Boyd, who caught her by the hair and pushed her back, and then went on with William to the end of the hall, where Johnnie Boyd took hold of William's hand, went with him to the gate, and helped him on Johnnie's horse. Johnnie got up behind William, and they rode off. D. W. Boyd, so far as witness could state, did nothing unless it was to lead up the horse for William Portwood to get on. She did not think that William said he did not want to go with the Boyds, but when he got to the horse he said he was afraid of it. Witness told him to get on and go with them, and that they would neither kill nor drown him. He was between fifteen and eighteen years of age.

Jugurtha Portwood, for the State, gave much the same account of the matter in most respects, but stated that William, when Boyd took him by the arm, said he would not go, and then Boyd pulled him up; that she, the witness, took hold of William's hand, and Boyd caught her by the hair and threw her back on the bed, pulling out a handful of her hair. Up to that time there had been no falling out between witness and the Boyds, but they had a falling out when she went to get William's things and they would not let her have them. This comprised the evidence for the prosecution.

Several witnesses testified in behalf of the defense. By their testimony it appears that the father of William Portwood died when he was small, and that his mother, who died a year or so before this prosecution, confided her children, and particularly William, to the care of her brother, J. P. Boyd, who, after her death, took him to his home and agreed to pay him ten dollars per month as hire for his services. According to witnesses for the defense, William was treated quite as well in the household of his uncle as the latter's children were, and there is nothing to the contrary in any of the testimony for the prosecution. Mrs. J. P. Boyd and Johnnie Boyd, who were present at Pickens's when the appellants came there to take William home, saw no constraint put upon him, and heard him express no other objection than his dread of the horse.

*E. B. Perkins*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

WINKLER, J. The appellants moved in the court below to quash the affidavit and information, and after verdict moved in arrest of judgment, on the ground substantially that the affidavit upon which the information was founded is not sufficient in law to support this prosecution, for the reasons that the same affidavit had been used as a basis for another prosecution which had been *nolle-prossed*, and that the affidavit was a file-paper in another cause and the court could not allow it to be withdrawn and used in this case.

It is stated in a bill of exceptions that, on the first day of the term, an attorney who was aiding the county attorney in the prosecution of this case took, without leave of the court, in open court, and over objection by the defendants, from the files of another case the affidavit in question and caused the clerk to number and file it in

this case; that the court's attention was called to it before the trial of this cause, and objection was made to the proceeding, which was overruled by the court. But the bill of exceptions further states that the affidavit referred to was filed by permission of the court. The precise objection to the employment of this affidavit is that it had been used as the foundation of another suit against the same parties, which the State had declined to further prosecute, and was therefore *functus officio;* and we presume that the first case had been dismissed when the affidavit was attempted to be used in this case.

We are of opinion that the objection to the affidavit is not well taken. A question quite similar to the one here presented came before this court in *Goode* v. *State*, 2 Texas Ct. App. 520. In that case the court said: "The fact that an insufficient or invalid information had been set aside or dismissed would not necessarily set aside and render null and void a good affidavit or complaint upon which it was based. We can see no objection to the use of the same complaint or affidavit as a basis or ground for a new and sufficient information; we fail to perceive how the rights of the defendant could in any manner be injured or prejudiced by such a course." We see no sufficient reason to change the opinion thus expressed in Goode's case, or that the reason for the ruling is changed because the case had been *nolle-prossed* instead of being dismissed. If, indeed, they are not technically the same, they both have the same effect upon the case.

We are of opinion, however, that the court below should have granted the defendants a new trial on the ground of the insufficiency of the evidence. The principal witnesses both for the State and the defendants seem to be relatives of each other and related to the defendants as well as to the injured person. It appears that the person alleged to have been falsely imprisoned was an orphan boy, who by common consent had been placed under the

care and control of one of the defendants, who was the uncle by marriage of the injured party. There is no testimony that he had violated the trust confided in him, or that he had failed to discharge the duties imposed upon him by the relation he bore to the injured party, who seems to be a mere boy and in need of some one to advise and control him. The boy did not testify at the trial, and the testimony is very meagre indeed that any force was employed in causing the boy to return home. No good cause is shown for the boy's leaving his uncle's roof, or that he objected to returning with him to it, the only home he is shown to have had; nor is it attempted to be shown that his home was other than a pleasant one.

We are of opinion the proofs do not sustain the charge of false imprisonment, and on this account the judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*